IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 7:16-cr-0057 |
| | ) |
| v. | ) |
| | ) |
| | ) |
| DOSHAY ANTWAN SMITH, | ) By:  Michael F. Urbanski |
| | ) Chief United States District Judge |
| Petitioner | ) |

## MEMORANDUM OPINION

Doshay Antwan Smith, a federal inmate currently serving a 168-month sentence for drug offenses, has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 202. On August 19, 2019, the United States filed a motion to dismiss to which Smith responded on September 6, 2019. ECF Nos. 217, 220. Smith also filed a motion for summary judgment on August 21, 2019. ECF No. 219. For the reasons set forth below, the court **GRANTS** the government's motion to dismiss, **DENIES** Smith's motion for summary judgment, and **DENIES** Smith's motion for § 2255 relief.

## BACKGROUND

On January 12, 2017, Smith was charged in a second superseding indictment with two counts of distributing a mixture containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts One and Two) and one count of conspiring to possess and distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Three). ECF No. 34. On May 26, 2017, Smith entered into a written plea agreement in which

he agreed to plead guilty to Counts One and Two of the second superseding indictment. Count Three would be dismissed. Plea Agreement, ECF No. 115 at 1-2.

The Plea Agreement noted that the court would make the determination of the appropriate guideline sentencing range in Smith's case and no representation was made to him regarding what the sentence would be. He was further advised that the court would make the determination of whether he was a career offender under U.S.S.G. § 4B1.1. If he were sentenced as a career offender, he would be facing a statutory maximum sentence of 20 years based on 21 U.S.C. 841(b)(1)(C), and his guideline-based offense level would be 32. Reducing that level by 3 points for acceptance of responsibility would result in a total offense level of 29. Coupled with his criminal history category VI, his sentencing range under the guidelines would be 151-188 months. If his offense level as a career offender was greater than the offense level otherwise applicable, the career offender guideline would apply. Plea Agreement, ECF No. 115 at 3.

The Plea Agreement further noted that for purposes of Guideline Sections 2D1.1 and 1B1.3, the drug weight was a factual matter to be determined by the court. Id. at 4. Smith agreed to waive his right to appeal his sentence, except for appealing any issue which could not be waived by law. Id. at 7. He also agreed to waive his right to collaterally attack his conviction or sentence, except for asserting a claim for ineffective assistance of counsel. Id. Smith entered a guilty plea the same day as he signed the Plea Agreement, and a sentencing hearing was set for October 20, 2017. ECF Nos. 116-119.

On October 5, 2017, the government filed a sentencing memorandum, ECF No. 142, noting that it was relying on the agreed statement of facts filed at the time of Smith's guilty

plea, ECF No. 117, and the "Offense Conduct" contained in paragraphs 20-107 of the Presentence Investigation Report ("PSR").[1] The government made clear that it was not relying on paragraphs 74 and 90-94 of the PSR and asked the court not to consider them. Those paragraphs referred to statements made by Brittney Edwards, and "lacked the necessary indicia of reliability." ECF No. 142 at 1. The government also asked that paragraph 84, which referred to a proffer by Smith, not be used as substantive evidence, but only be considered as evidence of his acceptance of responsibility. Id. at 1-2.

The government next noted that the Plea Agreement anticipated a guideline range of 151-188 months, while the PSR called for a guideline range of 235-293 months. The government attributed the discrepancy to the fact that the range calculated by the parties was premised on the application of the career offender guidelines alone without regard to the normal guideline calculation, which turned out to be higher. Nevertheless, the government recommended a sentence at the high end of the 151-188 range. Id. at 2.

On October 20, 2017, the court received a copy of a letter Smith sent to the Assistant United States Attorney prosecuting his case. In the letter, Smith objected to references in the PSR that he had participated in a conspiracy because he had not pled to the conspiracy count. He also alleged that he had been duped and tricked by his attorney, Seth Weston, into entering the plea. ECF No. 149 at 4. On October 31, 2017, attorney Weston filed a motion to withdraw the guilty plea and a motion to withdraw as counsel. ECF Nos. 149, 150. Following a hearing on the motions, the court granted the motion to withdraw and appointed Linda Willis as new

---

[1] For reasons which are not clear, the PSR for Smith was not filed in this case. However, the parties and the court referred to the contents of the PSR both in writing and during the sentencing hearing and the court has relied on these representations in assessing Smith's § 2255 arguments.

counsel for Smith. The court took the motion to withdraw the guilty plea under advisement. ECF Nos. 165, 166, 172.

Attorney Willis submitted a sentencing memorandum on June 10, 2018 in anticipation of the sentencing hearing set for June 20, 2018. ECF No. 195. She argued that the court should not rely on the testimony of Brittney Edwards, and in particular on a weight calculation attributing 7.654 kilograms of methamphetamine to Smith based on Edwards's testimony, because Edwards's credibility was highly questionable. ECF No. 195 at 2. Willis also argued that Smith did not agree that he should be held responsible for more than 5 kilograms of methamphetamine and believed that his base offense level would be calculated more correctly at 32 rather than 34. He also denied using a firearm in the course of selling methamphetamine, although he conceded that he had possessed firearms in his life and had been around others with firearms. He also objected to the two-level enhancement for the firearm based on the testimony of Charles Doss that he had seen drugs and guns at Smith's house because Doss was a drug addict and could provide no further details about his observations. Id. at 2-3. Willis asked for a sentence of no more than 151 months. Id. at 195.

At the June 20, 2018 sentencing hearing, Smith confirmed that he still wanted to plead guilty and proceed with sentencing. Sent. Hr'g Tr., ECF No. 215 at 6-7. The court noted that there were questions regarding the drug weight for which Smith would be held responsible and also regarding whether his offense level should be increased two points for possession of a firearm.

The PSR listed the drug weight as 5 to 15 kilograms, which corresponded to an offense level of 34. Id. at 9. After hearing testimony from the probation officer who prepared the PSR,

4

the parties agreed to "go down a step" in the drug weight, to a range of 1.5 to 5 kilograms, with the result that Smith's base offense level would be 32 instead of 34. Id. at 18-19. The court agreed and made a finding that Smith's base offense level was 32. Id. at 19. The court also pointed out that if Smith were being sentenced as a career offender his base offense level would be 32, but clarified that he was not being sentenced as a career offender. Id. at 20, 23.

Willis withdrew her objection to a two-point enhancement for possession of a firearm. Id. at 18. She did so because in an earlier proffer, Smith had stated that on one occasion he had traded a small amount of methamphetamine for a firearm. Id. at 21.

The court noted that it was not going to consider the statements of Brittany Edwards in the PSR and was not going to consider Smith's proffer statement, except to establish acceptance of responsibility. Id. at 22. The court found that his base offense level was 32, based on 1.5 to 5 kilograms of methamphetamine. His offense level was increased by 2 points for possession of a firearm, because a preponderance of the evidence showed that at least on one occasion he had possessed a firearm. Id. at 22-23. The court then found that he was entitled to a 3-point decrease for acceptance of responsibility, making his total offense level 31. Id. at 23-24. With his criminal history category of VI, Smith had a guidelines sentencing range of 188-235 months. Id. at 25. The court further noted that in the Plea Agreement, the guideline range was contemplated as being 151-188 months and because that was the agreed-upon range, the government was recommending a sentence at the low end of the newly-calculated guideline range, or 188 months. Id. at 25-26. After hearing testimony from Smith and argument from the attorneys, the court sentenced Smith to a below-guidelines sentence of 168 months.

Smith did not file a direct appeal. He filed this § 2255 motion on May 9, 2019 and argues that both of his attorneys provided ineffective assistance of counsel. He asserts that (1) attorney Weston was ineffective when he did not accurately predict the appropriate sentence based on the relevant drug weights, which caused the court to miscalculate his sentence; (2) attorney Willis failed to challenge Edwards's statements about the drug weight attributable to Smith; (3) Both attorneys failed to research his case, coerced him into a plea agreement, and failed to advise him he could have a relevant conduct hearing on the issue of drug quantity; (4) Willis was ineffective for failing to challenge the 2-point enhancement based on possession of a firearm; and (5) Willis ignored his motion to withdraw his guilty plea.

## APPLICABLE LAW

### A. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petition alleges a sentencing error that is neither constitutional nor jurisdictional, "a district court lacks authority to review it unless it amounts to a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United

6

States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When a petitioner argues that he received ineffective assistance of counsel as part of a plea agreement, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

7

### 1. Calculation of Guidelines Sentence

A sentence must be both procedurally and substantively reasonable. United States v. Williamson, 953 F.3d 264, 268 (4th Cir. 2020). A sentence is not procedurally reasonable if the district court did not properly calculate the guidelines range. Id. However, § 2255 generally provides no relief for a sentencing error unless the sentence exceeds the statutory maximum. Foote, 784 F.3d at 939; United States v. Link, 214 F.Supp.3d 506, 515 (E.D. Va. 2016). Nevertheless, a prisoner can show prejudice under the Strickland standard if his attorney's behavior fell below the range of competence demanded from attorneys in criminal proceedings and caused him to receive additional prison time at sentencing. United States v. Spafford, No. 1:08CR00037-002, 2010 WL 2991034, at *2 (W.D. Va. July 28, 2010) (citing Glover v. United States, 531 U.S. 198, 203-04 (2001)).

**(a) Drug Weight Calculation**

In determining drug weight for purposes of calculating a sentence under the guidelines, courts look to both the offense of conviction and a defendant's relevant conduct. Williamson, 953 F.3d at 269. "'[R]elevant conduct' means a defendant's own behavior generally surrounding the offense of conviction and also, when applicable, the behavior of his accomplices or co-conspirators." Id. "For drug offenses, the Guidelines make clear that '[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level,' as long as those drugs were part of 'relevant conduct' under the Guidelines." Id. (citing U.S.S.G. § 2D1.1, cmt. n.5).

Smith contends that his attorney Weston was ineffective because he did not accurately predict the appropriate sentence based on the relevant drug weights, which caused the court

8

to miscalculate his sentence. The crux of his argument appears to be that because the written factual basis for the guilty plea, ECF No. 117, stated that Smith had participated in one drug buy of 1.36 grams of methamphetamine, and a second drug buy of .77 grams of methamphetamine, that his guidelines sentence should have been based on a total of 2.1 grams of methamphetamine, which would have given him a base offense level of 12. With his criminal history category of VI, his guidelines range would have been 30 to 37 months.

Instead, his guidelines range was based on his being responsible for 1.5 to 5 kilograms of methamphetamine, which resulted in a base offense level of 32. After adjustments, his total offense level was 31, which resulted in a guidelines sentencing range of 188 to 235 months. Sent. Hr'g Tr., ECF No. 215 at 23, 25.

However, the guidelines range in Smith's case, based on the PSR and testimony by the probation officer, was correct. The probation officer testified at Smith's sentencing hearing that according to statements by Barry Miles, one of Smith's co-defendants, and other persons who bought drugs from Miles, Smith frequently delivered narcotics for Miles. One buyer stated he was fronted one to two ounces of crystal methamphetamine every two to three days from Miles and another stated she had bought one-half gram to one gram of crystal methamphetamine from Miles twice per week over a six-month period. Another individual described Smith as being "interchangeable" with Miles. Sent. Hr'g Tr., ECF No. 215 at 13-14. Other buyers stated that after Miles was arrested, Smith had taken over the business and handled it until Miles was released from custody and could handle his own customers. Id. at 15.

After hearing the testimony of the probation officer, and after Smith and his attorney discussed the testimony, the parties agreed that the evidence supported a finding that Smith was responsible for between 1.5 and 5 kilograms of methamphetamine. Id. at 18. The court also agreed and made the finding that a base offense level of 32 based on 1.5 to 5 kilograms of methamphetamine was supported by the record. Id. at 20; see U.S.S.G. § 2D1.1(4). With adjustments, his total offense level was 31, which along with his criminal history category of VI resulted in the guidelines range of 188-235 month. See U.S.S.G. Ch. 5 Pt. A.

Smith does not argue with the actual calculation, but asserts that the court relied upon the testimony of Brittany Edwards to find that he was responsible for 7.64 kilograms of methamphetamine. However, the court expressly did not rely upon the testimony of Edwards and found that Smith was responsible for between 1.5 and 5 kilograms of methamphetamine, rather than 7.64 kilograms. The court stated the following:

> Based on the position of the government and the position of the defendant I'm not going to consider paragraphs 74, 90 through 94. Those are the Brittany Edwards statements; I'm not considering them…. I'm going to find the base offense level is going to be a 32 instead of a 34. I find it that way based on the parties' agreement and I believe sufficient evidence in the record to establish 1.5 to five kilograms of methamphetamine.

Sent. Hr'g Tr., ECF No. 215 at 22. Thus, Smith's assertion that the court relied upon Edward's testimony to find that he was responsible for 7.4 kilograms is not supported by the record.

Smith also argued that his relevant conduct was immaterial to determining his guidelines sentence, citing in support United States v. Clay, 117 F.3d 317 (6th Cir. 1997).

10

However, Clay does not reach such a conclusion[2] and as discussed above, relevant conduct includes a defendant's own behavior generally surrounding the offense of conviction. Williamson, 953 F.3d at 269. In this case, although Smith was not convicted of conspiracy, his relevant conduct includes the drugs he sold to various buyers along with his co-defendant Miles.

The court's determination of Smith's guidelines sentencing range, based on relevant conduct including the sale of 1.5 to 5 kilograms of methamphetamine, was not error. Therefore, any calculation or prediction by Smith's attorney prior to the sentencing hearing that lead to that finding was not ineffective assistance of counsel.

Smith also complains that Willis was ineffective for failing to challenge Edward's statements about the drug weight attributable to Smith. However, as discussed above, this argument is a mischaracterization of the evidence and of the court's finding. All the parties agreed that Edwards's testimony was unreliable and should not be considered and the court expressly declined to consider it. Sent. Hr'g Tr., ECF No. 215 at 10-11, 12-13, 19-20. Therefore, any argument of ineffective assistance of counsel based on either of Smith's attorneys failing to challenge Edwards's statements is without merit.

**(b) Two-Point Increase based on Firearm**

Smith's base offense level was increased by two points for possession of a firearm. At the sentencing hearing, the probation officer testified that the PSR showed that on November 30, 2016, John Bryant said he purchased methamphetamine from Smith and at that time Smith

---

[2] In Clay, the Sixth Circuit held that where the facts underlying a conviction under 21 U.S.C. § 841 indicate the involvement of a juvenile, § 2D1.2 is the appropriate section for the district court to rely upon in determining the defendant's sentence. Clay, 117 F.3d at 320.

11

held an AK-47 firearm in his lap. Sent. Hr'g Tr., ECF No. 215 at 16. On March 7, 2017, Brian Muse reported seeing Miles and Smith point firearms at another man who tried to cheat them out of money. Id. at 16-17.

In his response to the government's motion to dismiss, Smith argued that he was incarcerated on November 30, 2016 and March 7, 2017 and could not have been seen with a firearm. ECF No. 220 at 1-2. However, the court does not read the testimony of the probation officer as stating that the events occurred on those two days. Rather, it appears that the statements were made on those two days, as both men were in federal custody at that time. See United States v. John Mark Bryant, No. 7:16-cr-00044-EKD (W.D. Va. filed Aug. 18, 2016) and United States v. Brian Dominique Muse, No. 17-cr-00011-MFU (W.D. Va. filed Feb. 2, 2017). Thus, the fact that Smith was in custody does not preclude consideration of the statements by the two men.

Smith also argues that his first attorney, Patrick Kenny,[3] encouraged him to proffer and it was his understanding that the proffer was made with the agreement that it would not be used by the government to increase his sentence. As part of the proffer, he admitted to possessing a firearm. He argues that he received ineffective assistance of counsel from Kenny when the attorney encouraged him to proffer and that Willis provided ineffective assistance of counsel because she failed to challenge the 2-point enhancement based on the proffer.

Willis explained her reasons for not objecting to the firearm enhancement at the hearing:

---

[3] Patrick Kenney was appointed to represent Smith shortly after his arrest. ECF No. 7. Kenney was terminated as counsel on January 20, 2017 and Weston was appointed the same day. Minute Entry of January 20, 2017 and ECF No. 49.

> Mr. Willis is very adamant that he is not a violent person, a gun-carrying person, he doesn't have that reputation, and many of these statements [from people who said he possessed a firearm] were absolutely false.
>
> That being said, Mr. Smith himself made a statement earlier on, in an earlier proffer, that on one occasion he traded a small amount of meth for a firearm. I think that statement that came out of his own mouth will come back to haunt him and that would probably get him there. So it seems to be somewhat of a waste of time to try to challenge five other statements that we think are inaccurate when there's one that will probably get him there anyway.

Sent. Hr'g Tr., ECF No. 215 at 6-7.

Even though Willis referred to the proffer, the record shows that the court did not rely on the proffer to find that Smith's offense level should be increased for possession of a firearm. The court stated, "I'm not considering the proffer statement of Mr. Smith, paragraph 84, except to establish acceptance of responsibility." Id. at 22. Instead, the court relied on "statements throughout the record of a gun being involved with Mr. Smith," finding by a preponderance of the evidence that on at least one occasion he had possessed a gun. Id. at 23. Therefore, even if Willis should not have referred to the proffer as evidence that Smith possessed a firearm, he was not prejudiced by her statement because the court did not rely on the proffer to make the firearm finding.

The record shows that Smith's sentence was calculated correctly and that his attorneys provided effective assistance of counsel in their assessment of the evidence against him, as well as in the advice they gave him regarding factors the court would consider at sentencing. His arguments to the contrary are without merit.

**2. Voluntariness of Plea**

In Blackledge v. Allison, 431 U.S. 63, 71 (1977), the Supreme Court noted that guilty pleas and plea bargains are important components of this country's criminal justice system and

13

properly administered, they benefit all concerned. Representations of the defendant, his lawyer, and the prosecutor at a plea hearing, as well as findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74 (citations omitted). "[I]in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005).

Smith argues that attorney Weston coerced him into pleading guilty, that attorney Willis told him that he could not withdraw his plea, and that he was never advised that his motion to withdraw his plea was not being considered by the court. However, the record does not support any of these allegations.

On May 9, 2017, Smith initialed each page and signed the plea agreement in his case. Plea Agreement, ECF No. 115. On May 26, 2017, at the plea hearing, he stated that he had gone over the Plea Agreement, discussed it with his attorney, and understood what it said. Plea Hr'g Tr., ECF No. 217-1 at 10-11. The prosecutor went over the terms of the Plea Agreement in court and Smith said he understood them. Id. at 11-18. The court explained the following:

> So what you need to take away from this is, while there is a guideline range, and it will be established, and we don't know right now what that guideline range is going to be, I don't know, but at the end of the day, I have the authority to

14

>sentence you, for each of those offenses, to a period of incarceration of zero to 20 years . . . for each offense.

Id. at 15-16. Smith acknowledged that he understood and proceeded to plead guilty to Counts One and Two. Id. at 16, 38.

In October 2017, Smith wrote the letter to the prosecutor, arguing that when he signed the Plea Agreement, he understood that he was not pleading guilty to the conspiracy charge and also that he would be sentenced to no more than 188 months. ECF No. 149 at 3. He believed the sentencing memorandum filed by the government categorized his case as a conspiracy, which he argued was inaccurate. Id. at 3-4. He also disagreed with the finding by the probation officer in the PSR that his sentencing range was 225-293 months. Id. at 4. He said he would not have entered the Plea Agreement had he not been duped by attorney Weston, whom he believed was working with the government to trick him into the plea. Id.

On October 31, 2017, Weston filed a motion to withdraw Smith's guilty plea as well as a motion to withdraw as counsel. ECF Nos. 150-151. The government filed a response in opposition to Smith's motion to withdraw his plea. ECF No. 159. On December 4, 2017, the court granted Weston's motion to withdraw as counsel and appointed Willis as counsel for Smith. ECF No. 165.

On June 20, 2018, Smith, represented by Willis, proceeded to sentencing. The court summarized what had occurred in the case up until that day, including the filing of the motion to withdraw the guilty plea. Sent. Hr'g Tr., ECF No. 215 at 3-6. Willis said that Smith intended to withdraw the motion to withdraw the guilty plea. Id. at 6. The following colloquy then occurred between the court and Smith:

> THE COURT: All right. Let me ask you, Mr. Smith: Do you want to go forward with the sentencing on – based on the guilty plea we did last year, May 26, and the plea agreement that was – that you signed last year on May 26?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Now, you have an option, and I'll allow you – if you want to withdraw this plea and you want to go to trial and have all the constitutional rights associated with trial, I will allow that. Okay? But I want you to tell me one way or the other, would you like to be sentenced today on the guilty plea or would you like to take a step back and go to trial?
>
> THE DEFENDANT: I would like to be sentenced today, sir.
>
> THE COURT: Okay. So you want – do you affirm the guilty plea that you made last year?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you want the Court to apply what's set forth in this written plea agreement?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. All right.

Id. at 6-7. The court heard evidence and argument and sentenced Smith to a below-guidelines sentence of 168 months. Id. at 48.

Nothing in the record supports Smith's allegations that Weston coerced him into pleading guilty, or that Willis told him that he could not withdraw his plea, or that he was never advised that his motion was not being considered by the court. To the contrary, Smith's sworn affirmations in open court confirm that he knowingly entered the plea agreement and pleaded guilty after having all the factors and consequences explained to him. Moreover, the concerns he expressed in his October 2017 letter to the prosecutor were addressed insofar as he did not plead guilty to conspiracy and he was sentenced to less than 188 months.

Finally, Smith argues that Weston and Willis failed to research his case, and failed to advise him he could have a relevant conduct hearing on the issue of drug quantity. However, he does not describe any evidence that further investigation would have revealed. Rather, he makes a conclusory allegation that without more, does not show that his counsel provided ineffective assistance. Nor does Smith describe what would have been revealed at a relevant conduct hearing. The court set out the issues with regard to drug quantities at the sentencing hearing and heard testimony from Smith. Sent. Hr'g Tr., ECF No. 215 at 28-36. This argument also is conclusory and does not show that his attorneys provided ineffective assistance.

Following a review of the arguments by the parties and the record in this case, the court concludes that attorneys Kenney, Weston, and Willis provided effective assistance of counsel to Smith. Accordingly, the government's motion to dismiss, ECF No. 217 is **GRANTED** and Smith's motion for relief under § 2255 is **DENIED**.

### C. Smith's Motion for Summary Judgment

Smith filed a motion for summary judgment on August 21, 2019, arguing that the government had not timely filed its motion to dismiss and that summary judgment should be granted because there was no genuine issue of material fact. However, on August 16, 2019, the government had filed a motion for extension of time until August 19, 2019 to file its motion. ECF No. 216. The government filed its motion on that date, and on August 20, 2019 the court granted the motion for extension of time and deemed the motion to dismiss timely filed. ECF No. 218. Therefore, Smith's motion for summary judgment based on lack of response by the government, ECF No. 219, is **DENIED** as moot.

## CONCLUSION

For the reasons stated, the court **GRANTS** the government's motion to dismiss, ECF No. 217, and **DENIES** Smith's motion for relief under 28 U.S.C. § 2255, ECF No. 202. Smith's motion for summary judgment, ECF No. 219, is **DENIED** as moot. Because Smith has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate Order will be entered.

                                         Entered:    April 15, 2020

                                         *Michael F. Urbanski* (digitally signed)
                                         Michael F. Urbanski
                                         Chief United States District Judge